UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

BODEGA INVESTMENTS, LLC, A Delaware      :        Index No. 08 CV 4065 (RMB)
Limited Liability Company, By And Through          ECF CASE
LOUIS P. KREISBERG, Its Tax Matters Partner,  :

                Plaintiff,            :

      -against-                            :                COMPLAINT

UNITED STATES OF AMERICA,                    :

            Defendant.          :
--------------------------------------------------------------X

      Plaintiff Louis P. Kreisberg ("Kreisberg"), individually and as tax matters partner

for Bodega Investments, LLC ("Bodega"), by and through his attorneys, Kostelanetz & Fink,

LLP, complaining against the defendant, alleges as follows:

<u>PRELIMINARY STATEMENT</u>

      1. Kreisberg brings this action to contest various adjustments made by the

Internal Revenue Service (the "IRS") to Bodega's federal partnership tax returns for the tax year

ended December 31, 2001, as set forth in a Notice of Final Partnership Administrative

Adjustment dated and mailed to Kreisberg on January 31, 2008. As explained below, Bodega is

a currency trading company that reported over $28 million in losses arising out of its activities

during the 2001 tax year. Although properly reflected on Bodega's federal partnership tax

returns, by notice dated January 31, 2008, the IRS informed Bodega that it was disallowing those

losses in their entirety, claiming, among other things, that the transactions which gave rise to

these losses lacked "economic substance." Kreisberg, individually, and as tax matters partner for

Bodega, now challenges the IRS's action.

JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1346 and 26 U.S.C. § 6226(e), which grant the district courts jurisdiction to adjudicate claims for readjustment of partnership items under 26 U.S.C. §§ 6221, et seq. In connection with the foregoing, and as a condition precedent to maintaining this action in the district courts, on April 25, 2008, Kreisberg tendered for deposit with the United States Treasury a payment totaling $9,936,260, which represents the amount by which Kreisberg's tax liability would be increased if the treatment of the partnership items set forth in Bodega's 2001 partnership tax return were made consistent with the adjustments urged by the IRS.

3. Because a substantial part of the events giving rise to the claims in this matter took place in this District, venue is proper in this District by virtue of 28 U.S.C. § 1391(e).

THE PARTIES AND OTHERS

4. Plaintiff Kreisberg is a citizen of the State of New York with an address located at 7 West 81st Street, New York, New York 10024. Kreisberg is an insurance industry professional who, among other business interests, owns a majority interest in Bodega, an entity for which he also serves as tax matters partner for purposes of 26 U.S.C. § 6231(a)(7).

5. Bodega is a limited liability company organized and existing under the laws of the State of Delaware. During the period relevant to the events set forth herein, Bodega was in the business, among other things, of engaging in currency and related transactions on behalf of itself and its investors. Bodega is taxed as a partnership under the Internal Revenue Code of 1986, as amended. Bodega's Taxpayer Identification Number is 94-3411847.

6. Defendant The United States of America (the "United States") is named in this

proceeding pursuant to 28 U.S.C. § 1346 and by virtue of its status as recipient of a $9,936,260 payment tendered for deposit with the United States Treasury on April 25, 2008.

7.  Octavia Capital, LLC ("Octavia") is, upon information and belief, a limited liability company organized and existing under the laws of the State of Delaware.  During the period relevant to the events set forth herein, Octavia was an investment management company that engaged in derivative trading in the foreign currency markets.  As of December 31, 2001, Octavia owned a 1% interest in Bodega and, as such, is entitled to be treated as a party to this proceeding under 26 U.S.C. § 6226(c).

8.  Lisburn Investments, LLC ("Lisburn") is, upon information and belief, a limited liability company organized and existing under the laws of the State of Delaware.  During the period relevant to the events set forth herein, Lisburn was in the business, among other things, of employing derivative trading strategies in the foreign exchange and fixed income markets.  As of December 31, 2001, Lisburn owned a .2% interest in Bodega and, as such, is entitled to be treated as a party to this proceeding under 26 U.S.C. § 6226(c).

9.  Helge Vilhelmsen ("Vilhelmsen"), is, upon information and belief, a resident of Oslo, Norway, and the managing director of Skandia Capital AS ("Skandia").  During the period relevant to the events set forth herein, Vilhelmsen owned and controlled Lisburn.  Upon information and belief, Vilhelmsen was engaged in a trade or business in the United States during the period relevant to the events set forth herein, subjecting him to taxation in the United States under 26 U.S.C. § 871(b).

10.  Kreisberg Investment Partners, LLC ("KIP") is a limited liability company organized and existing under the laws of the State of Delaware.  During the period relevant to the

events set forth herein, KIP was in the business, among other things, of employing derivative trading strategies in the foreign exchange and fixed income markets. Prior to December 19, 2001, KIP was wholly-owned by Kreisberg. On December 19, 2001, Kreisberg contributed his membership units in KIP to Bodega as part of a transaction in which he acquired a controlling interest in that entity.

THE FACTS

A. <u>Kreisberg</u>.

11. Kreisberg is a long-time insurance professional and recognized expert on the insurance needs of high net worth individuals. During his career, he has written and lectured extensively on issues relating to business succession and estate planning. He is an associate member of the American Society of Pension Actuaries, and has served as the Chair of the Insurance Committee for Trusts and Estates Magazine, a journal for estate planning professionals.

12. In or about 2001, Kreisberg began pursuing a possible business arrangement involving the proposed purchase of U.S.-based insurance products using borrowed foreign currencies. As part of this proposed arrangement, such products were to be financed in the first instance by borrowing Japanese yen, a currency which then, as now, could be borrowed at an extremely low rate of interest. The potential profit to be earned in structuring transactions in this manner depended on several factors, including, among others, the likelihood that the value of the dollar relative to the yen might change materially during the period in which such borrowings were outstanding. Exchange rate fluctuations such as these posed particular dangers not only to Kreisberg's proposed business, which would require a stable exchange rate in order to insure its

profitability, but to Kreisberg as well, who, while highly knowledgeable about the insurance industry, was generally unfamiliar with strategies for managing currency-related risks.

13.     Foreign currency traders employ multiple strategies for addressing just such uncertainties.  For example, currency traders often manage these risks by hedging their currency positions using "spreads" and "straddles," the former of which refers to the simultaneous purchase and sale of currency options on the same underlying currency with different exercise prices and/or expiration dates, and the latter of which refers to the purchase or sale of an equal number of currency "puts" or "calls" with the same terms and at the same time.

14.     Having never before engaged in currency trading, Kreisberg realized that it was important that he familiarize himself with these strategies in order to more fully evaluate the viability of his proposed business arrangement.  In connection with the foregoing, and as part of a separate but related effort to diversify his personal investment portfolio and earn a profit, Kreisberg began to explore the possibility of establishing one or more currency positions in the yen.  In late 2001, Kreisberg implemented a series of such currency transactions, first, through KIP, and later, through Bodega, both Delaware limited liability companies established for the purpose of facilitating such investments.

B.  The Subject Transactions.

15.     Kreisberg formed KIP on November 19, 2001.  On November 29, 2001, he made an initial capital contribution to KIP of $312,500 and, on November 30, 2001, entered into a Master Services Agreement with Deutsche Bank authorizing it to execute foreign currency and credit derivative transactions on its behalf.

16.     On December 3, 2001, KIP made an investment in the yen consisting of

partially offsetting long and short investment positions in that currency. The long position consisted of a call option purchased by KIP, having a "digital level" (i.e., exchange rate strike price) of 131.50 yen relative to the dollar, and an exercise date of March 1, 2002. The long position was structured so as to pay KIP $101,250,000 if the exchange rate on the yen equaled or exceeded 131.50 at maturity. The short position, in contrast, consisted of a call option sold by KIP, having an exchange rate strike price of 131.52 yen relative to the dollar, also exercisable on March 1, 2002. The short position required a $100,000,000 payment from KIP if the exchange rate equaled or exceeded 131.52 at maturity.

17. The long and short currency positions established by KIP offered the potential for significant returns. Although both options would expire worthless if the exchange rate was less than 131.50 at maturity, if the exchange rate equaled or exceeded that level at expiration, KIP would earn at least $1,250,000 (which would occur if the exchange rate was 131.52 or greater at maturity), with the possibility of a $101,250,000 payout (which would occur if the exchange rate was 131.50 or 131.51 at expiration). On December 12, 2001, and in anticipation of his entering into further transactions in the future, Kreisberg contributed an additional $8,750,000 in capital to KIP.

18. Octavia formed Bodega in late 2001. On December 12, 2001, Octavia sold 89% of its 100% interest in Bodega to Lisburn, which paid for its interest by contributing to Bodega various leveraged derivative investments then held by its wholly-owned subsidiary, Bray Investments, LLC ("Bray").

19. The investments consisted of two derivative positions tied to the yen. The first position had an exchange rate strike price range of between 103.50 and 123.50, requiring a

$55,620,777 payment to Bray if the exchange rate on the yen was equal to or greater than 103.50 but not greater than 123.50 as of a specified exercise date (December 10, 2001). It also contained a separate feature requiring that Bray be paid $2,777,000 if the exchange rate on the yen relative to the dollar was below 103.50 as of a later exercise date (December 27, 2001).

20.  The second position had an exchange rate strike price range of 123.50 and 143.50, requiring a $55,620,777 payment to Bray if the exchange rate was between those two values on December 10, 2001. Like the first position, it also contained a separate feature providing for a $2,777,000 payment, one which, in the case of the second position, would be subject to exercise if the exchange rate on the yen was above 143.50 on December 27, 2001. The options, as structured, thus provided for a payment to Bray of as much as $58,397,777 if, among other possibilities, the exchange rate on the yen relative to the dollar was between 103.50 and 123.50 on December 10, 2001 but greater than 143.50 on December 27, 2001.

21.  On December 19, 2001, Kreisberg purchased 90% of Lisburn's 89% interest in Bodega. Simultaneous with that transaction, Kreisberg separately transferred to Bodega the entirety of his ownership interest in KIP (to which he had already contributed $9,062,500), together with an additional capital contribution of $4,000,000. At the same time, Octavia contributed an additional $111,000 to Bodega. After these transactions were complete, Kreisberg, Octavia and Lisburn owned interests in Bodega of 98.8%, 1% and .2%, respectively, and Bodega became the sole owner of KIP.

22.  On December 27, 2001, the derivative positions originally held by Bray expired. Thereafter, Bodega engaged in a series of hedging and related transactions involving the yen and other instruments, resulting in more than $1.6 million in net profits during the first

quarter of the 2002 tax year. In late 2002, Kreisberg discontinued his pursuit of his proposed business arrangement involving the yen. Shortly thereafter, Bodega discontinued trading in foreign currencies, although it continued other investment-related activities going forward.

23. Bodega filed its federal income tax return for the tax year ended December 31, 2001 on or about October 14, 2002. Pursuant to applicable provisions of the Internal Revenue Code, Bodega reported a net loss for 2001 of $28,189,382. Bodega filed its federal income tax return for the tax year ended December 31, 2002 on or about October 9, 2003. Pursuant to applicable provisions of the Internal Revenue Code, Bodega reported net income for 2002 of $1,624,515. Kreisberg and, upon information and belief, Octavia and Lisburn, reported these results on a pass-through basis on their respective federal income tax returns for 2001 and 2002.

C. The IRS's Proposed Adjustments.

24. By letter dated June 16, 2004, the IRS advised Kreisberg that his personal tax returns had been selected for examination and review. Shortly thereafter, the IRS sent Kreisberg a request for documents and information concerning his ownership interest in Bodega. On January 25, 2007, Kreisberg submitted to an interview with the IRS, during which he answered questions about the nature of his investment activities involving the yen.

25. On January 31, 2008, the IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") affecting various items on Bodega's 2001 federal partnership tax returns. (See Exhibit A.) Among other adjustments, the FPAA proposed to disallow $27,925,756 of Bodega's loss for 2001, as well as disallow $270,111 in other deductions. The IRS sought to justify its proposed action by claiming, among other things, that

-8-

Kreisberg had failed to establish Bodega's "existence . . . as a partnership," an assertion which, while absurd, granted the IRS an ostensible legal basis for disregarding Bodega's separate legal identity.  As part and parcel of the foregoing, the IRS also took the position that even if Bodega's separate legal existence could be established, the partnership was formed "solely for purposes of tax avoidance," allowing the IRS, according to the FPAA, to treat the partnership as a "sham" and to disregard (for tax purposes) Kreisberg's more than $13,000,000 in capital contributions to that entity.

26.  The IRS erred in its determination in multiple respects.  Although Bodega was organized to insure proper recognition of any losses that might be incurred by the company, Kreisberg invested in Bodega for valid and legitimate business reasons.  In addition, he made significant capital contributions to Bodega (directly and through KIP), and earned substantial profits from Bodega's activities in 2002, activities which the IRS nowhere claims involved "sham" transactions or other improper conduct.

27.  The IRS has taken the position that the transactions identified in the FPAA are a sham, in part, because Vilhelmsen, the owner of Lisburn, is not subject to taxation in the United States.  In fact, under 26 U.S.C. § 871(b), any income earned by Vilhelmsen through Lisburn are fully taxable in the United States.  In addition to its other infirmities, the FPAA constitutes an improper attempt to compel Bodega to pay tax liabilities that, to the extent they exist, are payable by Vilhelmsen.

COUNT ONE
Claim For The Readjustment Of Partnership Items Under 26 U.S.C. § 6226(f)
(Disputing Adjustments Set Forth In The FPAA)

28.  Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 27 of the Complaint with the same force and effect as if set forth here in full.

29.  The adjustments made by the IRS, as set forth in the FPAA, are without factual or legal basis, and are, therefore, invalid.  All items of income, loss and/or separately stated items reported on Bodega's partnership tax return for 2001 are correct as reported.  Moreover, Bodega is a bona fide partnership for federal income tax purposes, both in its formation and in its operations, and is entitled to independent recognition for federal tax purposes.

30.  The IRS acted wrongfully and without cause, and in violation of its statutory grant of authority, in issuing its proposed adjustments.

31.  Kreisberg currently holds, and has, since December 19, 2001, held, a majority ownership interest in Bodega.  Throughout this period, Kreisberg has served as Bodega's tax matters partner within the meaning of 26 U.S.C. § 6231(a)(7).

32.  In view of the foregoing, Kreisberg is entitled to a judicial determination that the proposed adjustments set forth in the FPAA are without force or effect, together with a directive that the United States Treasury return to Kreisberg the amounts tendered for deposit by him prior to the filing of this Complaint.

-10-

COUNT TWO
Claim For Determination As To Any Penalties The IRS Might Seek
To Impose Under 26 U.S.C. § 6226(c)
(As Described In The IRS's January 31, 2008 FPAA)

33.  Plaintiff repeats and realleges each and every allegation contained in

Paragraphs 1 through 32 of the Complaint with the same force and effect as if set forth here in

full.

34.  In the FPAA, the IRS announced its intention to impose accuracy and related

penalties under 26 U.S.C. § 6662 in the event its proposed adjustments were to become effective.

The penalties which it indicated it will impose include a 40% penalty "on the portion of any

underpayment attributable to [a] gross valuation misstatement" as provided by 26 U.S.C.

§§ 6662(a), (b)(3), (e) and (h); a 20% penalty "on the portion of any underpayment attributable to

negligence or disregard of rules and regulations" as provided by 26 U.S.C. §§ 6662(a), (b)(1) and

(c); a 20% penalty "on the portion of any underpayment attributable to [a] substantial

understatement of income tax" as provided by 26 U.S.C. §§ 6662(a), (b)(2) and (d); or a 20%

penalty "on the portion of any underpayment attributable to [a] substantial valuation

misstatement" as provided by 26 U.S.C. §§ 6662(a), (b)(3) and (e).

35.  All items of income, loss and/or separately stated items reported on Bodega's

partnership tax return for 2001 are correct as reported.  Kreisberg had a meaningful stake in the

success or failure of Bodega, and held a legitimate interest in that entity for federal income tax

purposes.  The transactions involving Kreisberg and Bodega were proper under the Internal

Revenue Code.

36.  No accuracy-related penalties may be imposed on Bodega, or its members,

under 26 U.S.C. §§ 6662 since there was no understatement of tax for the 2001 tax year.

37.  Even if Bodega, or its members, understated taxes owed for the 2001 tax year, which Bodega and Kreisberg deny, any such understatement was not attributable to (i) negligence or disregard of rules and regulations, (ii) a substantial understatement of income tax, (iii) a substantial valuation misstatement within the meaning of 26 U.S.C. §§ 6662, or (iv) a gross valuation misstatement.

38.  There was substantial authority for the treatment of items reported on Bodega's 2001 tax return, as defined by 26 U.S.C. § 6662(d)(2)(B)(i) and applicable authority. In addition, the items reported on Bodega's 2001 tax return were reported in reasonable reliance upon, among other things, a careful and thorough legal opinion issued by the law firm of DeCastro, West, Chodorow, Glickfield & Nass on or about February 15, 2002.  Neither Bodega nor its partners had reason to doubt the analysis contained in that opinion, and reasonably relied on said opinion in reporting the items identified in the FPAA.

39.  Bodega and its members acted in good faith and with reasonable cause in filing their tax returns for the 2001 tax year.  To the extent Bodega, or its members, made any understatement in taxes for the 2001 tax year, which Bodega and Kreisberg deny, any understatement is excused by the defenses to accuracy-related penalties provided for in the Internal Revenue Code, including, without limitation, those contained in 26 U.S.C. §§ 6662 and 6664.

40.  In view of the foregoing, Kreisberg is entitled to a judicial determination that, even if Bodega or its member understated taxes owed for the 2001 tax year, no accuracy-related penalties could be imposed as a result of such underpayment.

COUNT THREE
Claim For Determination As To The Suspension Of Interest And Penalties
Under 26 U.S.C. § 6404(g)
(Disputing The IRS's Right To Assess Certain Interest and Penalties)

41. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 40 of the Complaint with the same force and effect as if set forth here in full.

42. Kreisberg filed his federal income tax return for the 2001 tax year on or about October 14, 2002. On or about May 15, 2007, the IRS provided Kreisberg with a Notice of Income Tax Discrepancy Adjustments ("Form 4549-A").

43. Under 26 U.S.C. § 6404(g)(1)(A), the IRS is required to provide a taxpayer with adequate notice that the taxpayer may be subject to proposed additions to tax within 18 months of the filing of the return for which such proposed additions relate. If the IRS fails to provide such notice, as defined by the Internal Revenue Code and accompanying regulations, then all interest, penalties and other additions to tax are deemed suspended during the period in which such failure persists.

44. The IRS failed to provide Bodega or its members with adequate notice of the possibility that they might be subject to the additions to tax proposed in the FPAA, as required by 26 U.S.C. § 6404(g)(1)(A). In view of the foregoing, even if Bodega, or its members, made any understatement in taxes for the 2001 tax year, which Bodega and Kreisberg deny, any and all interest, penalties and other additions to tax relating to the adjustments proposed in the FPAA must be deemed suspended for the period beginning 18 months from the filing of Kreisberg's 2001 federal income tax return and continuing until 21 days from the issuance of Form 4549-A,

as provided in 26 U.S.C. § 6404(g)(3).

45. In view of the foregoing, Kreisberg is entitled to judicial determination that, even if Bodega or its members understated taxes owed for the 2001 tax year, interest, penalties and other additions to tax relating to the adjustments proposed in the FPAA must be deemed suspended during the above-described period.

WHEREFORE, plaintiff respectfully demands judgment as follows:

(a) On plaintiff's First Count, for an adjustment of partnership items under 26 U.S.C. § 6226(f), judgment declaring that the IRS's proposed adjustments are without force or effect, and declaring further that the United States Treasury is required to return to Kreisberg the amounts tendered for deposit prior to the filing of this Complaint, together with applicable interest under 26 U.S.C. § 6226(3);

(b) On plaintiff's Second Count, for a determination of taxes under 26 U.S.C. § 6226(f), judgment determinating that, even if Bodega or its members understated taxes owed for the 2001 tax year, no accuracy-related penalties could be imposed as a result of such underpayment;

(c) On plaintiff's Third Count, for a determination of taxes under 26 U.S.C. § 6226(f), judgment determining that, even if Bodega or its members understated taxes owed for the 2001 tax year, all interest, penalties and additions to tax are tolled for the period beginning 18 months from the filing of Kreisberg's 2001 federal income tax return and continuing until 21 days after the issuance of Form 4549-A; and

(d) On all counts, awarding plaintiff the costs and fees associated with this action, including reasonable attorneys' fees, together with such other, further or different relief as this

-14-

Court deems just and proper under the circumstances.

Dated: New York, New York
         April 30, 2008

Yours, etc.,

KOSTELANETZ & FINK, LLP

By: _____
         Bryan C. Skarlatos (BS-7814)
         Brian C. Wille (BW-7036)

         7 World Trade Center
         New York, New York 10007
         (212) 808-8100

         Attorneys for Louis P. Kreisberg,
           Individually And As Tax Matters
           Partner For Bodega Investments, LLC

**Exhibit A**

# NOTICE 2000-44 CASE

**Internal Revenue Service**
SMALL BUSINESS/SELF-EMPLOYED DIVISION

4330 WATT AVENUE
SACRAMENTO, CA 95821

CERTIFIED MAIL NUMBER:  7006 0100 0003 4587 8724

Date:  **JAN 3 1 2008**

LOUIS KREISBERG
TAX MATTERS PARTNER
2560 RCA BOULEVARD, SUITE 107
PALM BEACH GARDENS, FL 33410

**Department of the Treasury**

Refer To:
  Pierce, SA 1106
Taxpayer Identifying Number:
  94-3411847
Name of Partnership:
  BODEGA INVESTMENTS, LLC
Partnership Identifying Number:
  94-3411847
Tax Year Ended:
  DECEMBER 31, 2001
Date FPAA Mailed to Tax Matters Partner:
  JANUARY 31, 2008
Person to Contact:
  Joe Pierce, TEFRA Reviewer
  ID 56-10649
Contact Hours:
  8:00 am to 4:30 pm
Contact Telephone Number:
  (916) 974-5520  Not a toll free number.

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Letter 1830 (DO) (Rev. 3-2001)
Catalog Number 61243U

You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership"*.

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more than one petition is filed in Tax Court, the first petition filed will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

**United States Tax Court**
**400 Second Street, NW**
**Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

Letter 1830 (DO) (Rev. 3-2001)
Catalog Number 61242U

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

### 3. If you do nothing:

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you after 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions, please write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you.

Thank you for your cooperation.

Linda E. Stiff
Acting Commissioner
By:        *Tim Conley*
              /S/MR
Tim Conley
Technical Services Territory Manager-West

Enclosures:
Form 870-P/Form 870-PT
Copy of this letter

Letter 1830 (DO) (Rev. 3-2001)
Catalog Number 61242U

## FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments. You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership, on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter. Thank you for your cooperation.

Letter 1830 (DO) (Rev. 3-2001)
Catalog Number 61242U

| Form **870-PT**<br>(Rev. 5-2006) | Department of the Treasury — Internal Revenue Service<br>**Agreement for Partnership Items and Partnership Level**<br>**Determinations as to Penalties, Additions to Tax, and**<br>**Additional Amounts** | IN REPLY<br>REFER TO:<br><br>TEFRA Reviewer<br>Pierce: SA 1106 |
|---|---|---|
| Taxpayer(s) name(s), address and ZIP code:<br><br>LOUIS KREISBERG<br>TAX MATTERS PARTNER<br>2560 RCA BOULEVARD, SUITE 107<br>PALM BEACH GARDENS, FL 33410<br><br>Taxpayer Identifying Number: 94-3411847 | Name of Partnership:<br>BODEGA INVESTMENTS, LLC<br><br>Taxpayer Identifying Number:<br>94-34*1847<br><br>Name of Tax Matters Partner:<br><br>LOUIS KREISBERG | Tax Year(s) Ended:<br><br>DECEMBER 31, 2001 |

## Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts

### &

## Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as determined in this agreement, plus any interest provided by law.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax, and additional amounts may be filed or prosecuted.

| Signature of Taxpayer | Date Signed | Phone Number |
|---|---|---|
| Signature of Taxpayer | Date Signed | Phone Number |
| By (Signature and Title) | Date Signed | Phone Number |

| FOR<br>INTERNAL<br>REVENUE<br>USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office | Title |

| Catalog Number 57315A | www.irs.gov | (See instructions for Signing Agreement) | Form **870-PT** (Rev. 5-2006) |
|---|---|---|---|

## INSTRUCTIONS FOR SIGNING FORM 870-PT

1. Sign the agreement if you wish to agree to the partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts, as shown on the attached Schedule of Adjustments. The execution and filing of this offer will expedite the adjustment of tax liability.

2. If a JOINT RETURN OF A HUSBAND AND WIFE was filed and both spouses intend to agree, both spouses should sign Form 870-PT. One spouse may sign as agent for the other if acting under a power of attorney, which, if not previously filed, must accompany this form. The IRS may accept the signature of only one spouse at its discretion. However, the agreement will only be binding on the signing spouse.

3. If the taxpayer is a corporation, the agreement should be signed with the corporate name followed by the signature and title of the officer authorized to sign Form 870-PT.

4. Your attorney or agent may sign for you if this action is specifically authorized by a power of attorney, which if not previously filed, must accompany this form.

5. If this offer is signed by a trust, the agreement must be signed with the trust name, followed by the signature and title of the person authorized to sign on behalf of the trust.

6. For a partner who is a member of a consolidated group and the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, the agreement should be signed by a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for the relevant consolidated return year(s). The common parent corporation signs the agreement in its own name. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77(a). However, if the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement and should do so in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(8)(iii). The signature and title of a current officer of the subsidiary corporation, who is authorized to bind the corporation, should be displayed in the signature block.

   For a partner who is the common parent corporation of a consolidated group and the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before, on or after June 28, 2002, a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year(s) should sign the agreement in the name of the common parent corporation. See Treas. Reg. § 1.1502-77(a).

7. If the Tax Matters Partner signs this offer, please include the title with the signature.

8. If the Tax Matters Partner is a subsidiary corporation in a consolidated group and the agreement is for a partnership year(s) ending on or before the last day of a consolidated return year beginning before June 28, 2002, then a currently authorized officer of the corporation who was the common parent corporation of the consolidated group for such consolidated return year should sign the agreement on behalf of the Tax Matters Partner. The signature and title of a current officer of the common parent corporation, who is authorized to bind the common parent corporation, should be displayed in the signature block. See Treas. Reg. § 1.1502-77(a). An authorized officer of the subsidiary corporation should also sign if it, as the Tax Matters Partner, is binding non-notice partners under the agreement. However, if the agreement is for partnership year(s) ending on or before the last day of a consolidated return year beginning on or after June 28, 2002, then a currently authorized officer of the subsidiary corporation should sign the agreement in the name of the subsidiary corporation. See Treas. Reg. § 1.1502-77(a)(3)(v).

NOTE: The submission of this offer by you and the acceptance of the offer for the Commissioner may result in an additional tax liability to you plus interest as provided by law. If the result is a decrease in tax, the amount of the decrease will be sent to you with interest as provided by law.

---

Department of the Treasury — Internal Revenue Service

## Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts

### SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| BODEGA INVESTMENTS, LLC | DECEMBER 31, 2001 | | |
| TAXPAYER IDENTIFYING NUMBER  94-3411847 | | | |
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME: | | | |
| | | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | | | |
| OTHER ADJUSTMENTS | | | |
| A. PORTFOLIO INCOME: INTEREST INCOME | | | |
| (1) ADJUSTMENT | ($6,485) | | |
| (2) AS REPORTED | $6,485 | | |
| (3) CORRECTED | 0 | | |
| B. OTHER INCOME (LOSS) | | | |
| (1) ADJUSTMENT | $27,925,756 | | |
| (2) AS REPORTED | ($27,925,756) | | |
| (3) CORRECTED | 0 | | |

REMARKS

ACCURACY-RELATED PENALTIES:
  --GROSS VALUATION MISSTATEMENT PENALTY
  --SUBSTANTIAL VALUATION MISSTATEMENT PENALTY
  --NEGLIGENCE PENALTY
  --SUBSTANTIAL UNDERSTATEMENT OF INCOME TAX LIABILITY PENALTY

* SEE ATTACHED EXPLANATION OF ADJUSTMENTS FOR OUTSIDE PARTNERSHIP BASIS

Catalog Number 57315A                          www.irs.gov                          Form 870-PT (Rev. 9 2006)

## Form 870-PT, Other Adjustments (Continued)

Page 2 of 2

| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| BODEGA INVESTMENTS, LLC | DECEMBER 31, 200* | | |
| TAXPAYER IDENTIFYING NUMBER 94-3411847 | | | |
| C. OTHER DEDUCTIONS | | | |
| (1) ADJUSTMENT | ($270,111) | | |
| (2) AS REPORTED | $270,111 | | |
| (3) CORRECTED | 0 | | |
| D. INVESTMENT INTEREST | | | |
| (1) ADJUSTMENT | ($6,485) | | |
| (2) AS REPORTED | $6,485 | | |
| (3) CORRECTED | 0 | | |
| E. CAPITAL CONTRIBUTED DURING YEAR | | | |
| (1) ADJUSTMENT | ($41,183,380) | | |
| (2) AS REPORTED | $41,183,380 | | |
| (3) CORRECTED | 0 | | |
| F. OUTSIDE PARTNERSHIP BASIS | | | |
| (1) ADJUSTMENT | ($66,471,568) | | |
| (2) AS REPORTED | $66,471,568 | | |
| (3) CORRECTED | 0 | | |
| G. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| H. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| I. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |

Catalog Number 57315A     www.irs.gov     Form 870-PT (Rev. 8-2006)

| Form 886-A (Rev. January 1994) | EXPLANATIONS OF ITEMS | Schedule number or exhibit SCHEDULE 2 |
|---|---|---|
| Name of taxpayer BODEGA INVESTMENTS, LLC | Tax identification Number 04-3411847 | Year/Period ended DECEMBER 31, 2001 |

1. It is determined that neither BODEGA INVESTMENTS, LLC nor its purported partners have established the existence of BODEGA INVESTMENTS, LLC as a partnership as a matter of fact.

2. Even if BODEGA INVESTMENTS, LLCS existed as a partnership, the purported partnership was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners. The formation of BODEGA INVENSMENTS, LLC, the acquisition of any interest in the purported partnership by the purported partners, the purchase of offsetting options, the transfer of offsetting options and other property to a partnership in return for partnership interests, the expiration or disposition of the options by the partnership, to generate a loss, all within a period of less than one month, had no business purpose other than tax avoidance, lacked economic substance and, in fact and substance, constitutes an economic sham for federal income tax purposes. Accordingly, the partnership and the transaction described above shall be disregarded in full, and (1) any purported losses resulting from these transactions are not allowance as deductions; and (2) increases to the adjusted basis of partnership interests to circumvent the loss limitation of Section 704(d) are not allowed for federal income tax purposes.

3. It is determined that BODEGA INVESTMENTS, LLC was a sham, lacked economic substance and, under section 1.701-2 of the Income Tax Regulations, was formed and availed of in connection with a transaction or transactions in taxable year ending December 31, 2001 a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. It is consequently determined that:

a. BODEGA INVESTMENTS, LLC is disregarded and that all transactions engaged in by the purported partnership are treated as engaged in directly by its purported partners. This includes the determination that the assets purported acquired by BODEGA INVESTMENTS, LLC including but not limited to foreign currency options, were acquired directly by the purported partners.

b. the foreign currency option(s), purportedly contributed to or assumed by BODEGA INVESTMENTS, LLC, are treated as never having been contributed to or assumed by said partnership and any gains or losses purportedly realized by BODEGA INVESTMENTS, LLC on the option(s) are treated as having been realized by its partners.

c. the purported partners of BODEGA INVESTMENTS, LLC should be treated as not being partners in BODEGA INVESTMENTS, LLC.

d. contributions to BODEGA INVESTMENTS, LLC will be adjusted to reflect clearly the partnership's or purported partners' income.

4. It is determined that the obligations under the short positions transferred to BODEGA INVESTMENTS, LLC constitutes liabilities for purposes of Treasury Regulation section 1.752-6, the assumption of which by BODEGA INVESTMENTS, LLC shall reduce the partners' basis in BODEGA INVESTMENTS, LLC in the amount of $24,976,000 for Louis Kreisberg. (Kreisberg Investment Partners), but not below the fair market value of the partnership interest.

5. It is determined that the purchase and sold option positions are integrated into a single transaction in accordance with its economic substance under section 988.

| Form 886-A<br>(Rev. January 1994) | EXPLANATIONS OF ITEMS | Schedule number or exhibit<br>SCHEDULE 2 |
|---|---|---|
| Name of taxpayer<br><br>BODEGA INVESTMENTS, LLC | Tax Identification Number<br><br>94-3411847 | Year/Period ended<br><br>DECEMBER 31, 2001 |

6.  It is determined that neither BODEGA INVESTMENTS, LLC nor its partners entered into the option(s) positions or purchased the derivatives with a profit motive for purposes of section 165(c)(2).

7.  It is also determined the economically-offsetting option positions constitute an arrangement under section 465(b)(4) to limit the exposure to risk of loss and that neither under BODEGA INVESTMENTS, LLC nor its partners established any other amounts considered to be at risk for purposes of section 465 that would allow the partners to deduct losses arising from or in connection with BODEGA INVESTMENTS, LLC.

8.  It is determined that, even if the foreign currency option(s) are treated as having been contributed to BODEGA INVESTMENTS, LLC, the amount treated as contributed by the partners under section 722 of the Internal Revenue Code is reduced by the amounts received by the contributing partners from the contemporaneous sales of the call option(s) to the same counter-party. Thus, the basis of the contributed option(s) is reduced, both in the hands of the contributing partners and BODEGA INVESTMENTS, LLC. Consequently, any corresponding claimed increases in the outside basis in BODEGA INVESTMENTS, LLC resulting from the contributions of the foreign currency option(s) are disallowed.

9.  It is determined that the adjusted basis of the long call positions (purchased call options) and other contributions purportedly contributed by the partners to BODEGA INVESTMENTS, LLC has not been established under I.R.C. section 723. It is consequently determined that the partners of BODEGA INVESTMENTS, LLC have not established adjusted basis in their respective partnership interests in an amount greater than zero (-0-).

| Form 886-A<br>(Rev. January 1994) | EXPLANATIONS OF ITEMS | Schedule number or exhibit<br>SCHEDULE 2 |
|---|---|---|
| Name of taxpayer<br>BODEGA INVESTMENTS, LLC | Tax Identification Number<br>94-3411847 | Year/Period ended<br>DECEMBER 31, 2001 |

10. Accuracy-Related Penalties

It is determined that the adjustments of partnership items of BODEGA INVESTMENTS, LLC are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the partnership or its partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions. In addition, all of the underpayments of tax resulting from those adjustments of partnership items are attributable to, at a minimum, (1) substantial understatements of income tax, (2) gross valuation misstatement(s), or (3) negligence or disregarded rules or regulations. There has not been a showing by the partnership or any of its partners that there was reasonable cause for any of the resulting underpayments, that the partnership or any of its partners acted in good faith, or that any other exceptions to the penalty apply. It is therefore determined that, at a minimum, the accuracy-related penalty under Section 6662(a) of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of BODEGA INVESTMENTS, LLC. The penalty shall be imposed on the components of underpayment as follows:

a. a 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

b. a 20 percent penalty shall be imposed on the portion of any underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), 6662(c), of the Internal Revenue Code.

c. a 20 percent penalty shall be imposed on the portion of any underpayment attributable to the substantial understatement of income tax as provided by Sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.

d. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3), and 6662(e) of the Internal Revenue Code.

It should not be inferred by the determination of the Accuracy Related Penalty in this notice that fraud penalties will not be sought on any portion of an underpayment subsequently determined to be attributable to fraud or that prosecution for criminal offenses will not be sought under IRC § 7201, 7206 or other provisions of federal law if determined to be appropriate.